## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**12/17/2007**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 06-35891 |
| | § | CHAPTER 7 |
| MICHAEL RAY MCCOMBS, | § | |
| Debtor | § | |

| | | |
|---|---|---|
| H.D. SMITH WHOLESALE DRUG CO. | § | |
| Plaintiff, | § | ADV. NO. 07-3043 |
| | § | |
| vs. | § | |
| | § | |
| MICHAEL RAY MCCOMBS, | § | |
| W. STEVE SMITH, in his capacity as | § | |
| TRUSTEE FOR MICHAEL RAY | § | |
| MCCOMBS, ALICIA ATKINSON | § | |
| MCCOMBS, and INTERNAL | § | |
| REVENUE SERVICE | § | |
| Defendants. | § | |

## MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
## FILED BY H.D. SMITH WHOLESALE DRUG COMPANY
## AND W. STEVE SMITH, CHAPTER 7 TRUSTEE
[Docket Nos. 43 and 44]

**I.     Introduction**

The Debtor's homestead exemption in this case was limited to $125,000.00 by 11 U.S.C. §

522(p). The homestead was sold, resulting in a significant amount of non-exempt proceeds, and the

parties to this Adversary Proceeding each claim to be the rightful owner of these proceeds.  The

Chapter 7 trustee, W. Steve Smith (the Trustee), claims that the homestead was community property

which became part of the Debtor's estate—which would make the estate the owner of the non-

exempt proceeds.  The Debtor's estranged wife, Alicia Atkinson McCombs (Atkinson), claims,

among other things, that the homestead was partitioned into her separate property prior to the Debtor

filing this Chapter 7 petition—which would make her the owner of the proceeds.  Finally, H.D. Smith Wholesale Drug Company (H.D. Smith) claims that its prepetition judgment lien on the Debtor's homestead is valid and enforceable against the remaining proceeds because they lack any homestead protection—which would make H.D. Smith a properly perfected secured creditor and the eventual owner of the proceeds.  For the reasons discussed herein, the Court concludes that H.D. Smith's lien is valid and enforceable as to the non-exempt proceeds.

The Court makes the following Findings of Fact and Conclusions of Law under Fed. R. Civ. P. 52 as incorporated by Fed. R. Bankr. P. 7052.  To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such.  The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II.   Findings of Fact[1]

1.   Less than 1215 days prior to the filing of the Debtor's Chapter 7 case, the Debtor and Atkinson (collectively, the McCombs) purchased two adjoining parcels in Katy, Harris County, Texas.  The parcel located at 2402 Ivy Run Court included a house where the McCombs resided (the Property).  The adjacent parcel located at 2406 Ivy Run Court was unimproved (the Lot).  The McCombs purchased these two parcels with the intent to, and later did, use them collectively as a single homestead.

2.   On June 12, 2006, the Debtor executed an untitled document (the Agreement) which begins: "I, Michael McCombs, agree to the following as it pertains to the divorce proceedings from

---

[1] Unless otherwise indicated, all Findings of Fact are derived from the parties' stipulations contained in the Joint Pretrial Statement. [Docket No. 65.]

Alicia Anne Atkinson-McCombs."[2]    The Agreement addresses various divorce-related matters including custody of the McCombs' two children, child support payments, and the division of assets.    Paragraph 12 of the Agreement states: "All proceeds from the sale of the house at 2402 Ivy Run Court Katy, Texas 77450 will be the property of Alicia.  I will pay the property taxes and realtor fees involved in the sale of the house."

3.    In the months preceding the filing of the Debtor's bankruptcy petition, the Debtor and Atkinson discussed the possibility of divorce, and, after the petition date, they did eventually separate.  However, the McCombs never initiated a divorce proceeding and remain legally married.

4.    Prior to the filing of the Debtor's petition, H.D. Smith obtained a judgment against him in the amount of $538,016.46.  By virtue of obtaining this judgment, H.D. Smith has a claim against the Debtor's Chapter 7 estate.

5.    On June 29, 2006, H.D. Smith abstracted its judgment, and, on July 7, 2006, recorded its judgment lien in the Official Public Records of Real Property of Harris County, Texas.

6.    On November 3, 2006, the Debtor filed his Chapter 7 petition.

7.    Sometime after the petition date, the Debtor informed the Trustee that he had entered into a prepetition contract for the sale of the Property but not the Lot.[3]  Closing on this sale was scheduled for December 11, 2006.

---

[2] Atkinson asserts that both the Debtor and she signed the Agreement on June 12, 2006.  This issue is discussed further in the Conclusions of Law.

[3] The Debtor presumably informed the Trustee of his intentions because the Debtor apparently knew that he could not exempt all of the Property and that therefore a portion of the Property belonged to the estate.  Eventually, the Debtor and the Trustee reached an agreement that the Debtor could exempt $125,000.00 of the Property.  [*See* Finding of Fact No. 16.]

8.    On November 21, 2006, the Debtor filed an amended Schedule A disclosing this contract for sale of the Property. [Docket No. 13.] Both the amended and original Schedule A listed the Property as community property with the caveat that "non-debtor spouse will claim full Texas exemption."

9.    On November 22, 2006, the Trustee filed his Emergency Application to Retain Broker Nunc Pro Tunc and to Sell Property "As Is" and Free and Clear of All Liens, Claims, Charges, Encumbrances and Interests. [Main Case, Docket No. 9.]

10.   Atkinson contacted the Trustee and informed him that she would object to the sale of the Property unless they could resolve the division of the sale proceeds. The Trustee and Atkinson agreed that the sale would go forward without objection and that the funds would be placed in escrow pending final determination by this Court of their correct distribution.

11.   On November 29, 2006, the Court issued an order granting the Trustee's emergency motion to sell the Property. [Main Case, Docket No. 17.] This order stated that "any other liens and/or encumbrances against the Property shall be, and hereby are, transferred to the balance of the Sale Proceeds." *Id.*

12.   On December 12, 2006, the closing on the sale of the Property took place. After satisfying the liens on the Property and paying closing costs and fees, $398,849.03 in proceeds remained.[4]

13.   On February 9, 2007, H.D. Smith filed this adversary proceeding against the Trustee and Atkinson (the Adversary Proceeding). [Docket No. 1.]

---

[4] H.D. Smith's lien was not paid out of these sale proceeds.

14. On March 2, 2007, the Trustee filed his Answer to the Complaint and Counterclaim and Crossclaim. [Docket No. 10.]

15. On March 13, 2007, Atkinson filed her Answer and Counterclaim. [Docket No. 12.]

16. On June 22, 2007, the Court signed a Stipulation and Agreed Order Regarding Objections to Exemption of Real Property. [Main Case, Docket No. 144.] The Order required the Trustee to issue a check made payable to both the Debtor and Atkinson in the amount of $125,000.00, representing the Debtor's maximum allowable homestead exemption pursuant to 11 U.S.C. § 522(p).[5] Further, the Order required that any funds in excess of $125,000.00 generated from the sale of the Property or the Lot would be held by the Trustee until the final resolution of this Adversary Proceeding.

17. Out of $398,849.03 remaining from the sale of the Property, the Trustee paid the Debtor his $125,000.00 homestead exemption pursuant to the above-referenced Order. Thus, $264,849.03 from the sale of the Property is still being held in escrow (the Excess Proceeds).

18. On July 1, 2007, H.D. Smith filed its First Amended Complaint to Determine Interests in Real Property and Proceeds of Real Property and to Determine Extent Validity and Priority of Lien, and for Turnover. [Docket No. 30.]

19. On August 15, 2007, H.D. Smith filed its Motion for Summary Judgment [Docket No. 43], and the Trustee filed a Counter Motion for Summary Judgment. [Docket No. 44.]

20. On October 15, 2007, the parties filed a Joint Pre-Trial Statement. [Docket No. 65.]

---

[5] Unless otherwise indicated, all section references are to 11 U.S.C. and all references to the Code are to the United States Bankruptcy Code.

5

21.  On October 18, 2007, the Court held a hearing on the competing motions for summary judgment. At this hearing, counsel for Atkinson informed the Court that the Trustee had paid the Debtor his $125,000.00 exemption and the Debtor had delivered half of that amount to Atkinson.

22.  As of the October 18, 2007 hearing, the Lot was under a contract for sale at approximately $272,000.00, less costs and expenses. If the sale of the Lot closes, those proceeds will become part of the Excess Proceeds.

23.  At the conclusion of the October 18, 2007 hearing, the Court took the competing motions for summary judgment under advisement.

## III.  Jurisdiction and Venue

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O). Venue is proper pursuant to 28 U.S.C. § 1409.

## IV.  Conclusions of Law

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c), made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that a court may grant summary judgment only if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant then must present affirmative evidence showing a genuine issue of material fact. *Id.*; FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("The opponent must do more than simply show that

6

there is some metaphysical doubt as to the material facts."). The Court must "construe all evidence in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation*, 98 F.3d 179, 181 (5th Cir. 1996).

## B.    Summary of the Parties' Arguments

The Trustee argues that the Property was community property which became part of the Debtor's Chapter 7 estate; and that, after paying the Debtor's $125,000.00 exemption, the remaining Excess Proceeds became non-exempt property of the estate. Atkinson asserts that she is entitled to the entire Excess Proceeds because the Property had become her separate property prepetition because the Debtor either partitioned or gifted the Property to her. In the alternative, Atkinson argues that 11 U.S.C. § 522(p) does not limit her homestead exemption because she did not file a joint petition with the Debtor, and that, as a non-debtor spouse, she maintained her unlimited homestead exemption under Texas law. H.D. Smith argues that it held a properly perfected prepetition judgment lien against the Property, which is now enforceable against the non-exempt Excess Proceeds. Meanwhile, the Debtor, having already received his maximum allowable homestead exemption, has disclaimed any interest in the Excess Proceeds.

## C.    Analysis of Atkinson's Arguments[6]

### i.    The Agreement was not a valid partition of the Property because it fails the substantive requirements of Texas law.

Atkinson argues that the Agreement was a valid partition agreement under Texas law which converted the Property from joint management community property into her separate property. The

---

[6] Atkinson made several alternative arguments and the Court will address each one in turn.

Court finds that the Agreement fails to satisfy the substantive requirements for a partition agreement under Texas law.

Texas law allows married couples to partition their community property into separate property. "At any time, the spouses may partition or exchange between themselves all or part of their community property, then existing or to be acquired, as the spouses may desire. Property or a property interest transferred to a spouse by a partition or exchange agreement becomes that spouse's separate property." TEX. FAM. CODE ANN. § 4.102 (Vernon 2006). However, such a partition agreement must be in writing and signed by *both* parties. TEX. FAM. CODE ANN. § 4.104 (Vernon 2006). Atkinson argues that both the Debtor and she signed the Agreement on June 12, 2006. In support of this allegation, Atkinson submitted a different version of the Agreement than the one that was provided by the Trustee and H.D. Smith. Atkinson's version includes both her and the Debtor's signatures; whereas, the other version includes only the Debtor's signature.

For summary judgment purposes, the Court assumes that, as the non-movant, Atkinson's version of the Agreement is authentic.[7] Even with the benefit of this assumption, there is no genuine

---

[7] The Court must draw all inferences in favor of Atkinson since she is the non-movant. However, the Court has reviewed the competing versions of the Agreement and is troubled by several highly suspect facts. At the Rule 2004 examination, the Debtor produced a copy of the Agreement. The same version of the Agreement was attached to the motions for summary judgment of both H.D. Smith and the Trustee. This version of the Agreement bears only the Debtor's signature. Atkinson attached this version of the Agreement as an exhibit to her Motion to Reconsider the Order to Sell Property. The Motion to Reconsider was filed in the main case on January 11, 2007 and was subsequently withdrawn. [Main Case, Docket No. 34.] Atkinson also attached an affidavit to the Motion to Reconsider in which she attested that the version of the Agreement with only the Debtor's signature was a true copy. However, several months later, Atkinson attached to her Response to the Motions for Summary Judgment filed by H.D. Smith and the Trustee a different version of the Agreement, which bore the signatures of both the Debtor and her. In other words, after the opposing parties had raised the argument that the absence of her signature rendered the Agreement invalid as a matter of law, Atkinson, for the first time, produced an alternate version of the Agreement including her signature.

Additionally, the Debtor's signature is contained in a pre-printed signature block. However, Atkinson's signature has no signature block and appears to be haphazardly wedged into the available white space beneath the Debtor's signature. Beneath Atkinson's signature is the seal of the notary public, which states that "This instrument was acknowledged before me on June 12th, 2006 by Michael McCombs." There is no mention or notarization of the signature of Atkinson.

issue of material fact because the Agreement does not reference a partition or language synonymous with a partition.

> The term "partition" as used in this section [Tex. Fam. Code § 4.102] contemplates a division of property among the parties, not a complete forfeiture or assignment. *See McBride v. McBride*, 797 S.W.2d 689, 692 (Tex. App.—Houston [14th Dist.] 1990, writ denied). Absent a specific reference to a partition or language indicating that such a division was intended, Texas courts have refused to uphold transactions between spouses as partitions. *See Maples v. Nimitz*, 615 S.W.2d 690, 695 (Tex. 1981); *Collins v. Collins*, 752 S.W.2d 636, 637 (Tex. App.—Fort Worth 1988, writ ref'd).

*Byrnes v. Byrnes*, 19 S.W.3d 556, 559 (Tex. App.—Forth Worth 2000, no pet.).

The Agreement does not contain "a specific reference to a partition or language indicating that such a division was intended" as required by Texas case law. Rather, the McCombs expressed their intent in the first sentence of the Agreement, which reads: "I, Michael McCombs, agree to the following as it pertains to the divorce proceedings from Alicia Anne Atkinson-McCombs." [Finding of Fact No. 2.] There is no doubt that the McCombs intended the Agreement to be effective only upon the filing of a divorce proceeding. Additionally, paragraph 12 expressed no present intent to divide or alter the community character of the Property as a parcel of real property. It reads: "All *proceeds* from the sale of the house at 2402 Ivy Run Court Katy, Texas 77450 *will be* the property of Alicia." (emphasis added). [Finding of Fact No. 2.] Any claim Atkinson could make pursuant to this language was only against future *proceeds* from the sale of the Property. Thus, the Agreement was contingent upon two occurrences, neither of which happened prepetition: (1) filing for a divorce; and (2) the sale of the Property. Therefore, on the date of the petition, the Property was still community property and became part of the estate pursuant to § 541(a)(2)(A). The Court concludes

that the Agreement was substantively insufficient to partition the Property into Atkinson's separate property.

### ii.    The Agreement is not evidence of a gift from the Debtor to Atkinson.

Atkinson next argued that the Court should interpret the Agreement as written confirmation of a gift to her from the Debtor.  *See Pankhurst v. Weitinger*, 850 S.W.2d 726, 729-30 (Tex. App.—Corpus Christi 1993, writ den'd) (holding that an agreement which lacks the statutory requirements of partition may be construed as a gift).  It is possible under Texas law to create separate property in one spouse through a gift from the other spouse, but the transaction must satisfy the elements of a valid gift: "1) an intent to make a gift, 2) delivery of the property, and 3) acceptance of the property."  *Id.* at 730 (citing *Grimsley v. Grimsley*, 632 S.W.2d 174, 177 (Tex. App.—Corpus Christi 1982, no writ)).

The Agreement fails to satisfy the three general requirements of a gift. The Agreement does not express the Debtor's donative intent.  It merely states, "All proceeds from the sale of the house at 2402 Ivy Run Court Katy, Texas 77450 will be the property of Alicia." [Finding of Fact No. 2.] Despite Atkinson's characterization of this phrase, the Agreement mentions nothing about a transfer of *real property*.  Instead, the Agreement states that, in the case of the McCombs' divorce, Atkinson will receive all of the *proceeds* from the sale of the Property.[8]  The Debtor scheduled the Property as joint management community property, thus evidencing that he never intended to gift the Property to Atkinson.

---

[8] Not only is there a difference in the subject of the purported gift—money rather than real property—it is important to note that the Agreement is phrased in the future tense; the proceeds "will be" Atkinson's, rather than an immediate transfer.

The Property had not been sold prepetition and no proceeds yet existed.  Therefore, the Debtor could not have delivered, nor could Atkinson have accepted, the subject of the alleged gift. Even if the Court were to construe the Agreement as a promise of a gift, such a promise to make a gift would be unenforceable under Texas law.  *Harmon v. Schmitz*, 39 S.W.2d 587, 589 (Tex. Comm'n App. 1931);  *Akin v. Akin*, 649 S.W.2d 700, 704 (Tex. Civ. App.—Fort Worth 1983, writ ref'd n.r.e.) ("A valid inter vivos gift is not something that is open for deliberation or consideration of the donee for some future time.  An inter vivos gift can have no reference to the future, but must go into immediate and absolute effect.").

Moreover, the Agreement also fails to satisfy the additional requirements for a gift of real property, which may only be transferred by a gift through: (1) actual delivery and recording of a deed; or (2) parol transfer.  *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.).  The Debtor never executed a deed transferring title of the Property to Atkinson.  Nor could there be a parol gift of the Property because "it is necessary to the validity of a parol sale or gift of land in Texas . . . that possession be delivered, and substantial and valuable improvements made, with the consent or knowledge of the vendor, upon the faith of such gift or sale."  *Hooks v. Bridgewater*, 111 Tex. 122, 129 (1921); *Troxel*, 201 S.W.3d at 297; *Thompson v. Dart*, 746 S.W.2d 821, 825 (Tex. App.—San Antonio 1988, no writ).  There is no evidence in the record that Atkinson made any improvements to the Property in reliance upon a purported gift by the Debtor.  Thus, Atkinson's argument that the Agreement is evidence of a gift of the Property from the Debtor is without merit.

### iii.    The Agreement is unenforceable as an agreement incident to divorce.

The Agreement is most accurately described as an agreement incident to divorce. Texas law allows spouses that are contemplating a divorce to "enter into a written agreement concerning the division of the property." TEX. FAM. CODE ANN. § 7.006(a) (Vernon 2006). Such agreements may be "revised or repudiated before rendition of the divorce or annulment unless the agreement is binding under another rule of law." *Id.; see also Woods v. Woods*, 167 S.W.3d 932, 933 (Tex. App.—Amarillo 2005, no pet.). The divorce court may either adopt the spouses' agreement or, upon a finding that the terms are not just and right, disregard the agreement. TEX. FAM. CODE ANN. § 7.006(b) and (c) (Vernon 2006). One way that an agreement could be "binding under another rule of law" would be as a valid contract. However, in this case, no consideration was exchanged in connection with the Agreement, which means it is not a valid contract. Therefore, the Agreement could not bind the parties until being adopted into a final divorce decree. The Agreement is unenforceable because the parties have never filed for divorce and no decree has been entered. [Finding of Fact No. 3.]

### iv.    Atkinson's rights under Texas homestead law do not trump § 522(p) simply because she did not file a joint petition with the Debtor.

Atkinson next argues that because she is not a co-debtor, her unlimited homestead exemption under Texas law should be unaffected by her husband's Chapter 7 case and the application of § 522(p). Essentially, she asserts that while § 522(p) limits the Debtor's homestead exemption to $125,000.00, she has a separate and distinct homestead exemption which is not subject to the limit provided by § 522(p) because she has not filed a bankruptcy petition.

In making this argument, Atkinson is attempting to revive the extinct practice of spouses selecting separate exemptions. Fifth Circuit case law formerly held that if a married couple filed a joint bankruptcy petition, one spouse could select the federal exemptions and the other could select the state exemptions. *In re Cannady,* 653 F.2d 210, 212 (5th Cir. 1981); *see also In re Allen*, 725 F.2d 290, 292 (5th Cir. 1984). Indeed, the original intent of Congress in passing the Bankruptcy Reform Act of 1978 seemed to condone this split exemption strategy as part of joint debtors' bankruptcy planning. *Cannady,* 653 F.2d at 213-14. However, this practice was prohibited by Congress in 1984. "With the passage of the Bankruptcy Amendments And Federal Judgeship Act of 1984, this dual practice of one spouse selecting federal exemptions and the other the state exemptions is no longer allowed." *In re Graham*, 64 B.R. 469, 472 n.3 (Bankr. S.D. Tex. 1986).

Although Atkinson is not a joint debtor in this case, her argument would allow for a similar windfall as described in *Cannady* and proscribed by Congress. Rather than filing jointly and selecting separate exemptions, Atkinson did not file a petition and now seeks to enforce her state exemptions in her husband's bankruptcy. In her Answer, Atkinson states, "[A] debtor's spouse does not lose her exemptions just because her husband filed for bankruptcy." [Docket No. 12.] While such an argument may likely have been well-received prior to 1984, it is contrary to present law.

Section 541(a)(2)(A) provides that "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is under sole, equal, or joint management control of the debtor" becomes property of the estate. The McCombs were married when they purchased the Property and the Lot [Finding of Fact No. 1], and therefore these parcels became community property. The McCombs did not divorce [Finding of Fact No. 3] or take any other action to change the community nature of the Property and the Lot. Thus, on the petition date,

13

their homestead was still community property and became property of this Chapter 7 estate pursuant to § 541(a)(2)(A).  Tex. Fam. Code Ann. §§ 3.002 and 3.003(a) (Vernon 2006).

Section 522(b) allows an individual debtor to select either the state or federal exemptions. Courts have interpreted this language to mean that *only* a debtor, and not the non-debtor spouse, has the authority to elect exemptions.

> Section 522(b) also provides that in a joint case, the spouses may not split the exemptions; that is, the prohibition applies to one claiming the state exemptions and one claiming the federal exemptions. Here, we do not have a joint case, and the debtor spouse has claimed the Florida exemptions. The nondebtor spouse is asking to claim the Wisconsin homestead exemption in a Florida case. If the Code will not allow spouses in a joint case to claim different sets of exemptions, it is illogical to assume that spouses could claim exemptions from different states when only one files. **The Code has addressed the situation of a single spouse filing, and only the individual debtor can make the exemption claim.**

*Kapila v. Morgan (In re Morgan)*, 286 B.R. 678, 683 (Bankr. E.D. Wisc. 2002) (emphasis added); *see also In re Homan*, 112 B.R. 356, 359 (B.A.P. 9th Cir. 1990); *In re DeHaan*, 275 B.R. 375, 381 (Bankr. D. Idaho 2002); *In re Victor*, 341 B.R. 775, 782 (Bankr. D. N.M. 2006) (quoting *In re Johnson*, 184 B.R. 141, 145-46 (Bankr. D. Wyo. 1995) ("There is no provision for non-filing persons to claim their own exemptions from the debtor's estate.  The statutory language is clear that the exemptions must be claimed by or on behalf of the debtor.")).

In the case at bar, the Debtor elected the state exemptions.  Unlike the cases discussed above, Atkinson, as a non-debtor spouse, is not attempting to claim her own state exemptions when her husband elected federal exemptions, nor is she trying to claim state exemptions from a different state than her husband.   Instead, Atkinson asks this Court to recognize a second Texas homestead

exemption for her in addition to the state exemptions selected by the Debtor.[9]  Such a rule would

eviscerate § 522(p) by allowing married couples who file separately (or in the case of Atkinson, non-

filing spouses) to claim the maximum state exemptions in circumvention of a clear federal policy

to limit those state exemptions.[10]

Atkinson has failed to establish any legal basis to claim a separate state homestead exemption

in addition to the exemption claimed by the Debtor.  *Cannady*, the only case law cited by the Debtor,

has not been good law since 1984.  Accordingly, the Court finds that Atkinson's community property

interest in the Property and the Lot became property of the estate pursuant to § 541(a)(2)(A) and is

subject to the $125,000.00 homestead exemption limit in § 522(p).[11]

---

[9] In the alternative, Atkinson argued that if she could not enforce her homestead exemption distinct and apart
from the Debtor, then her vested property right (i.e., her prepetition homestead exemption) should be interpreted as akin
to dower.  Section 363(g) allows the trustee to sell property "free and clear of any vested or contingent right in the nature
of dower or curtesy."  Section 363(j) states that "the trustee shall distribute to the debtor's spouse . . . and to the estate,
the proceeds of such sale . . . according to the interests of such spouse . . . and of the estate." However, these statutes only
apply to dower and not to property sold as community property.  Texas does not recognize the doctrine of dower, but
Atkinson argues that Texas homestead rights are "in the nature of dower" under § 363(g).  In support of this proposition,
Atkinson cites the following language from the Supreme Court of Texas: "We have referred to the similarity of the estate
of the surviving wife to the Dower Estate.  On the other hand, the homestead rights of the surviving husband are
comparable to the Common Law Estate by Curtesy." *Woods v. Alvarado State Bank*, 118 Tex. 586, 594, 19 S.W.2d 35,
37 (1929).  As plainly stated, *Woods* and the other cases cited by Atkinson all involve *widows*.  It is impossible to discuss
dower rights outside of the context of a deceased husband; it would be contradictory to the meaning of dower.  Since
Atkinson's husband has not died—only filed a bankruptcy petition—Atkinson's dower argument has no merit.

[10] In a recent decision, this Court held that Congress intended the enactment of § 522(p) to supersede Texas
homestead law under certain circumstances.  *In re Presto*, 376 B.R. 554, 585-86 (Bankr. S.D. Tex. 2007).

[11] Atkinson also claimed that it would be an unconstitutional taking to limit her homestead exemption by the
application of § 522(p) because she had never filed a bankruptcy petition.  In support of this proposition, Atkinson cited
*U.S. v. Rodgers*, 461 U.S. 677 (1983).  *Rodgers* deals exclusively with the Internal Revenue Code and has no application
in this Adversary Proceeding.  Additionally, *Rodgers* involved the sale of community property to satisfy separate debts;
whereas the case at bar deals with the sale of community property to pay community debts.  The mere fact that Atkinson
did not file a joint petition does not change the nature of any the estate's assets or debts.  Under the Code, community
property and community debts are part of the bankruptcy estate.  11 U.S.C. § 541(a)(2)(A) and (B).

v.    **Conclusion Regarding Atkinson's Arguments**

Atkinson has not established the existence of any genuine issue of material fact regarding whether the Property became her separate property prepetition. As a matter of law, the Agreement: (1) lacks the substantive requirement of an intent to partition; and (2) fails as a gift of community property because the Debtor expressed no present intention to make a gift and did not deliver a deed to Atkinson. A plain reading of the Agreement shows that the Debtor intended it to be an agreement incident to divorce. However, since no divorce proceeding was ever initiated, the Agreement is unenforceable. Finally, the Code does not recognize Atkinson's claim to a homestead exemption separate and distinct from the Debtor. In terms of exemptions, a non-debtor spouse has no greater rights than a joint debtor spouse.

D.    **Analysis of H.D. Smith's Arguments**

i.    **H.D. Smith's lien was perfected prepetition.**

H.D. Smith's first assertion is that its judgment lien attached and was perfected prior to the Debtor filing bankruptcy. The Trustee responds that the lien is invalid because the homestead exemption protected the Property from attachment. This issue poses a fundamental question regarding the nature of the homestead exemption in Texas: Is a homestead exempt merely from foreclosure, or is a homestead exempt from the attachment of any judgment lien? While this question proves to be a complicated and unsettled one in Texas courts, the Fifth Circuit has provided a definitive answer for federal courts. *Henderson v. Belknap (In re Henderson)*, 18 F.3d 1305 (5th Cir. 1994).

In *Henderson*, Belknap, a judgment creditor, filed an abstract of judgment against all real property of the debtors. *Id.* at 1307. The debtors sought to avoid the lien under § 522(f)(1). One requirement of § 522(f)(1) is that the lien must have already fixed against the property. *Id.* at 1308. Thus, the issue in *Henderson* was "whether the Belknaps' lien 'fixes' against the Hendersons' homestead." *Id.* The Fifth Circuit recognized that the Texas Constitution is somewhat at odds with the Texas Property Code and that many state court cases had discussed this conflict. Article 16, Section 50 of the Texas Constitution states: "No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon." However, Section 52.001 of the Texas Property Code, which allows an abstracted judgment to constitute a lien, makes no reference to homestead rights. Section 41.011 of the Texas Property Code simply states that a homestead is "exempt from seizure for the claims of creditors."

The Fifth Circuit chose to follow the line of cases which hold that liens attach against the homestead but are unenforceable. *Henderson*, 18. F.3d at 1309 ("The debtor's homestead is not exempt from the perfected lien; rather the homestead is exempt from any seizure attempting *to enforce* the perfected lien.") (quoting *Exocet, Inc. v. Cordes*, 815 S.W.2d 350, 352 (Tex. App.—Austin 1991, no writ) (emphasis in original)). The Fifth Circuit did express some reservation about its conclusion: "While we recognize that the issue may be open to debate, we conclude that under Texas law the Belknaps' judicial lien did 'fix,' i.e., fasten a liability against the Hendersons' homestead—albeit an unenforceable one." *Henderson*, 18 F.3d at 1309.[12] In fact, this debate has continued in the state courts, which are not bound by *Henderson*. *See, e.g., Wilcox v. Marriott*, 103

---

[12] The Fifth Circuit has continued to apply *Henderson*. *See, e.g., Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*, 416 F.3d 394, 400 (5th Cir. 2005).

S.W.3d 469, 473 (Tex. App.—San Antonio 2003, pet. denied) ("Texas law is well settled that a judgment lien that has been properly abstracted cannot attach to a homestead as long as the property remains homestead.") (citing *The Cadle Co. v. Harvey*, 46 S.W.3d 282, 285 (Tex. App.—Fort Worth 2001, pet. denied)).[13]

This Court, however, is not permitted to disregard the Fifth Circuit's interpretation of Texas law. *Ford v. Cimarron Ins. Co., Inc.*, 230 F.3d 828, 832 (5th Cir. 2000) ("a prior panel's interpretation of state law has a binding precedential effect on other panels of this court absent subsequent state court decisions or amendment rendering our prior decision clearly wrong."). The Texas cases cited by the Trustee do not directly address *Henderson*; they are just the continuation of the same line of contrary Texas cases discussed and rejected by *Henderson*. These cases have not added new material to the debate; they only echo the arguments found in the cases which pre-date *Henderson*. Only the Texas Supreme Court could provide absolute finality, but it has so far denied review of the issue. Since no Texas Supreme Court decision or state statute has rendered *Henderson* "clearly wrong," this Court will continue to apply its holding as the federal rule. *Id.* Accordingly, the Court concludes that the Debtor's homestead was not exempt from the attachment of H.D. Smith's judgment lien; it was only exempt from H.D. Smith attempting to seize the Property through foreclosure while the Property constituted the McCombs' homestead.

Despite electing the Texas exemptions, the Debtor became subject to the Code upon the filing of his Chapter 7 petition. Congress intended § 522(p) to supersede state homestead

---

[13] On the federal side of this issue, one recent bankruptcy case from the Western District of Texas held contrary to the *Henderson* rule, but this decision appears to be an anomaly. *In re Green*, Case No. 06-11761, 2007 WL 1093791 (Bankr. W.D. Tex. April 9, 2007). *Green* cited only Texas state case law on this issue, but not *Henderson* or any other Fifth Circuit case. *Id.* at *6.

exemptions under certain circumstances, namely when a debtor has acquired an interest in his homestead within 1215 days of filing. *Presto*, 376 B.R. at 585-86. Here, it is undisputed that § 522(p) applied to the Debtor and limited his homestead exemption to $125,000.00. Thus, any interest in the Property and the Lot exceeding $125,000.00 was non-exempt and H.D. Smith's lien became enforceable, but for the automatic stay, upon this non-exempt portion (i.e., the Excess Proceeds).[14]

<blockquote>

ii.   **The Trustee argues that if H.D. Smith's lien was perfected prepetition, then its elevation to an enforceable lien constitutes a violation of the automatic stay or is an avoidable transfer.**

</blockquote>

The Trustee next argues that a determination that H.D. Smith properly perfected its lien prepetition would necessarily create either a violation of the automatic stay or an avoidable postpetition transfer. The automatic stay prevents H.D. Smith, as a holder of a prepetition lien, from taking "any act to create, perfect or enforce [its lien] against property of the debtor." 11 U.S.C. § 362(a)(5). The lien was created when H.D. Smith abstracted its judgment against the Debtor, and, based upon the Court's holding above, H.D. Smith's lien was perfected when it was recorded in the real property records of Harris County, Texas. Both of these actions occurred prepetition. Thus, the only way that H.D. Smith could violate the stay would be if its actions constituted enforcement of its lien against the Property and the Lot. This adversary proceeding was not an action to enforce its lien, at least so far as H.D. Smith was not seeking to foreclose on the Property. Rather, H.D. Smith initiated this adversary proceeding to determine the extent, validity and priority of its lien—an action so fundamental to the bankruptcy process that it is a core proceeding. 28 U.S.C. § 157(b)(2)(K).

---

[14] The Court's order of November 29, 2006 authorizing the sale of the Property provided that all liens on the Property were transferred to the Excess Proceeds. [Main Case, Docket No. 17.]

Thus, H.D. Smith could not violate the automatic stay because this Adversary Proceeding is not an enforcement of its lien.

11 U.S.C. § 549(a)(2)(B) allows the Trustee to avoid postpetition transfers of "property of the estate" that are "not authorized under this title or by the court." The Trustee theorizes that if H.D. Smith's lien was unenforceable prepetition and became enforceable postpetition, H.D. Smith must have received this right in some manner of a postpetition transfer. The Trustee describes this change in H.D. Smith's position as an "elevation in rights." The Court does not believe that this "elevation in rights" can be classified as a transfer of property of the estate. 11 U.S.C. § 541(a)(1) defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." H.D. Smith's "elevation in rights" was not a transfer from the estate; rather, it occurred by operation of law upon the Debtor filing his Chapter 7 petition. The Debtor selected the state exemptions, but his homestead exemption was limited to $125,000 by § 522(p).[15] In sum, the Court holds that H.D. Smith's "elevation in rights" occurred by operation of § 522(p) and was not a transfer of property of the estate.

## V.    Conclusion

Atkinson has no claim to the Excess Proceeds. The Agreement, upon which her main claim relies, is an unenforceable agreement incident to divorce which does not qualify as a partition or gift of community property. Moreover, Atkinson's Texas homestead exemption does not exist separate and apart from this Chapter 7 case merely because she did not file a joint petition with the Debtor.

---

[15]    Ironically, if the Debtor had never filed bankruptcy, he would have had the full protection of Texas homestead law and, since there would be no non-exempt portion of his homestead, H.D. Smith's lien would have continued to be unenforceable.

20

The Debtor elected the state exemptions, but the homestead exemption was limited to $125,000.00 pursuant to § 522(p).   Accordingly, the only interest that Atkinson had in the Property was her community property share of the $125,000.00 exemption, which she has already received.

H.D. Smith is a fully secured creditor as to the Excess Proceeds.  Its lien was properly perfected prior to the Debtor filing this Chapter 7 case.  Despite the lien being properly perfected, it was unenforceable because the Debtor was protected by Texas homestead law.  Upon filing bankruptcy, the Debtor's homestead exemption was limited by § 522(p), thereby rendering the Excess Proceeds non-exempt. Since the Excess Proceeds lack any homestead protection, H.D. Smith is fully secured as to that non-exempt portion.

For the foregoing reasons, H.D. Smith's motion for summary judgment shall be granted, and the Trustee's motion for summary judgment shall be denied.  A corresponding order will be entered on the docket simultaneously with the entry of this Memorandum Opinion.

Signed this 17th day of December, 2007.

Jeff Bohm
United States Bankruptcy Judge